PEOPLE *v.* FLEMING.

*(Supreme Court, General Term, First Department.* April 17, 1891.)

1. LARCENY—INDICTMENT—VARIANCE.
    Where an indictment charges the larceny of property belonging to a person unknown, and the ownership of the same appears during the trial, it is an immaterial variance, not affecting the rights of the parties, and should not be regarded.
2. CROSS-EXAMINATION—DISCRETION OF COURT.
    Upon the cross-examination of a witness in a criminal trial the court may, without error, in the exercise of judicial discretion, exclude questions whose answers cannot affect or impeach the credibility of the witness' testimony, such as, "You are somewhat of an amateur detective, are you not?"
3. SAME—IMPEACHMENT.
    The answers made by a witness touching collateral matters upon cross-examination, during a preliminary trial in a police court, are conclusive upon the defendant asking such questions, and, in a subsequent trial upon indictment, he cannot introduce evidence to impeach the testimony of such witness in those particulars.
4. CRIMINAL LAW—TRIAL—REMARKS OF JUDGE.
    The defendant, in a criminal prosecution, cannot, upon appeal, object to comments upon the evidence made by the judge to the jury during the trial, without objection or exception on his part, unless it should appear that defendant has been so greatly prejudiced thereby that a reversal should be had without the aid of an exception.

Appeal from court of general sessions, New York county.

Indictment against Michael Fleming for grand larceny. Defendant appeals from a judgment of conviction entered upon the verdict of a jury.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*Purdy & McLaughlin,* for appellant. *De Lancey Nicoll,* (*Bartow S. Weeks,* of counsel,) for respondent.

VAN BRUNT, P. J. The evidence upon the part of the people showed that on the 4th of September, 1890, the defendant got on a crowded street-car, and took from the pocket of a gentleman sitting on the dash-board of the car a gold watch, which he passed from his right to his left hand; that he was then seized by one of the passengers, but broke away and ran, but was afterwards overtaken, and, after a struggle, was turned over to the custody of an officer. The watch in the mean time had been picked up by the conductor, and returned to the owner. At the close of the people's case a motion was made that the jury be instructed to acquit, on the ground that no sufficient evidence had been adduced to make out a case, which motion was denied. The defendant then went on the stand, denied the larceny, but admitted being on the car at the time, and alleged that he was seized by one of the passengers, who had been a witness for the prosecution, dragged off the car, and accused of taking the watch; that he did not like the idea, felt indignant, not grossly and highly indignant, but he was innocent of it, but he felt so indignant that he wanted to run away, and did run; that he had no particular cause for running, except his indignation; that the passenger caught him again, and, without any apparent reason, tore the sleeve off his coat, although the defendant did not try to get away; and that his indignation, after the tearing of the coat, was so great that he kept on running, until the passenger caught him again, and he tried this several times, only being able to run a few feet at a time, because

of the passenger, who clung to him; that he attempted to run away, because he knew he was being unjustly accused, to escape being arrested. The defendant further stated that the man who is running away is generally taken to be the thief, but, notwithstanding this, he persisted in running, and kept it up until he found it was impossible to rid himself of his companion, who walked with him until he gave him in charge of a police officer, who took him to the station-house. It further appeared upon the cross-examination of the defendant that he had been arrested on suspicion about 15 times, and that he had been convicted once for stealing a watch from a gentleman who identified him, although he had been in bed for six hours after the commission of the crime. Some attempt was made to show that the passenger who testified to the act was unworthy of belief, because, as the appellant's counsel says, he was a salesman, occasional mind reader, amateur detective, and general supervisor of other people's business, which, however, did not have much effect upon the jury, and should not have any very great effect upon this court. The defendant was convicted, and from the judgment thereupon entered this appeal is taken.

One of the points raised is that there was a material variance between the indictment and the proof as to the ownership of the watch; the allegation in the indictment being that the name of the person whose property had been stolen was unknown, while the proof on the trial was that the owner, Mr. Hertz, was before the grand jury. It is true that the witness testified that the owner, Mr. Hertz, was before the grand jury; but it is not shown that Hertz testified before them, or that his name, as the owner of the watch, became known to the grand jurors; and it is suggested by the district attorney that it is somewhat difficult to see how the witness could have known that Hertz was before the grand jury, as only one witness at a time can be examined before them; and, furthermore, the evidence does not seem to be material, and did not in any way affect the substantial rights of the parties, and should not, therefore, be regarded.

It is further urged as ground for reversal that the court erred in excluding evidence, upon cross-examination, of the principal witness, who, after being cross-examined as to the circumstances, was asked: "You are somewhat of an amateur detective, are you not?" This question was objected to, and the objection sustained. It is clear that this line of examination was entirely within the discretion of the court. It in no way tended to impeach the character of the witness, or to affect the credibility of his testimony, and no error upon its exclusion could possibly be predicated. He was also asked: "Do you remember testifying in the police court that you were the complainant in a case against a boy charged with larceny that occurred at a fire?" This was objected to as incompetent, and the record shows that the objection was sustained, but the witness answered: "I do not think I testified before the magistrate in the police court that previous to this time I had been a complainant in a criminal case against another person." This seems to have been an answer to the question, and even if the exclusion of the question, if it was excluded, might have been error, it clearly is not available upon this appeal, as it was substantially answered, in the *first* place, and, *secondly*, because no exception was taken.

A witness upon the stand, who was present at the examination in the police court, and stated that he remembered hearing the testimony of Dreyer, the only complaining witness in this case, was asked: "Do you remember him stating that previous to this time he had had a person arrested for larceny?" He was also asked whether on that occasion he heard him testify to having been a complainant in any other criminal case than the one then on trial. These questions were objected to, and excluded, and exceptions taken. There was no error in the ruling of the court. All these questions were collateral, and the appellant was bound by the answer of the witness.

What he stated as to collateral matters, when upon examination in the police court, could not become principal evidence in the case upon trial, simply because the interrogatories were repeated. The answers of the witness were equally conclusive upon either examination, and he could not be impeached by showing that he had made different statements, at different times, in reference to those things which were collateral. The evidence was clearly incompetent, and was properly excluded.

It is urged that the court erred in charging the jury, and, in considering the points raised, it is proper to say that no exceptions were taken to the charge. And it is apparent, from a reading of the charge, that, if any exception had been taken to the language of the court in some particulars, it would have been immediately obviated; and it does not appear that the defendant has suffered any such great prejudice as that, without the aid of an exception, a reversal should be had. The expression of opinion by the court that he failed to see that the direct evidence of the witness Dreyer had been shaken by cross-examination does not afford, without the aid of an exception, any ground for this court setting aside the verdict. Neither does the statement of the court that, unless Dreyer had committed perjury, it seemed to him that there should be very little hesitation on the part of the jury in coming to the conclusion that the crime of larceny had been committed. As to that portion of the charge in which the court stated that, if the complainant's evidence was true, he having seen the defendant commit a felony, it was his duty as a citizen to arrest him, it is clear that the court was simply intending to convey to the minds of the jury the difference between the right of a citizen and of a police officer to arrest; the right of a citizen being to arrest where a felony has been committed, and that of a peace-officer where he has reason to believe that a crime has been committed, and that the party arrested is guilty of it. It was to enforce this distinction that this expression was used, to which no exception was taken.

It is urged that the court erred in its reply to the appellant's request for an instruction in regard to an attempt. The record shows the following: "*Defendant's Counsel.* I desire to ask your honor to charge the jury that, in case they may convict this man, they may convict him of an attempt to commit the crime of grand larceny in the second degree. *The Court.* Gentlemen, if you come to the conclusion that the defendant did not actually take the watch from the person of the complainant, and get it into his possession feloniously, but that he did any act effecting that object, you may convict him of an attempt to commit grand larceny in the second degree." It is very clear that the court intended to say, and probably did say, "tending to effect that object," and that if the word "effecting" was used, which is very doubtful, notwithstanding its presence in the record, it was the duty of the counsel to call the attention of the court to it, in order that the verbal correction might be made. But no exception was taken, and the defendant has not suffered any damage, because the charge was more favorable to him as printed than it would have been had the correct language been used. Upon the whole record, therefore, we think that there is no error which calls for a reversal of the judgment, and it should be affirmed.

DANIELS, J., (*concurring.*) I agree that this conviction should be affirmed; but at the same time the practice of judges expressing their opinions on the evidence in the course of the trial, or in the submission of the case to the jury, should be disapproved. It has been excused and tolerated, but never commended. It is a departure from the province of the judge, and an encroachment on that of the jury, and often an injury to a person whose guilt is in doubt. The practice is wrong, and should be avoided.